IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PERFORMANCEPARTNERS LLC, | § | |
| | § | |
| *Plaintiff*, | § | CASE NO.: 3:23-CV-564 |
| | § | |
| V. | § | DEMAND FOR JURY TRIAL |
| | § | |
| NEXTGEN PARKING, LLC, | § | |
| | § | |
| *Defendants.* | § | |

# REPLY IN SUPPORT OF MOTION TO DISMISS

However cleverly crafted, allegations in a complaint cannot breathe life into a patent covering ineligible subject matter. The only document this Court needs to examine is the patent itself. No further record needs to be developed because the patent is invalid on its face.

Plaintiff is mostly arguing that its patent is valid because of its "distinction over the prior art," but the inventive concept inquiry under 35 U.S.C. § 101 is distinct from the novelty analysis under 35 U.S.C. § 102. Whatever may, or may not, have been "well-understood, routine, and conventional in the art as of August 2005" is immaterial to the patent's eligibility for patent protection under § 101.

Likewise, Plaintiff's argument that the patented method has many advantages over a human valet is irrelevant. Many human-performed tasks are now handled by computers, and that has been beneficial in all of the ways Plaintiff argues, but that does not make automating those tasks any more eligible for patent protection.

Finally, Plaintiff has failed to serve its Patent Initial Disclosures. Under Local Patent Rule 3-1(b), this failure may be sanctionable with dismissal.

On July 14, 2023, the Federal Circuit issued its opinion in *Trinity Info Media, LLC v. Covalent, Inc.*, No. 2022-1308, 2023 U.S. App. LEXIS 17902 (Fed. Cir. July 14, 2023). This case is highly instructive because it involved a similar method patent with similar arguments. A copy of that opinion is attached.

A. **The Asserted Claims Are *Not* Patent-Eligible Under 35 U.S.C. § 101**

As the Federal Circuit has pointed out, "a claim for a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016)(quoted in *Trinity*, No. 2022-1308, at *14). In other words, the § 101 inventive concept inquiry is distinct from the § 102 novelty analysis. *See id.* This is why Plaintiff's arguments about "what was, and what was not, well-understood, routine, and conventional in the art as of August 2005" is entirely irrelevant to the eligibility question. Those are issues of novelty, not eligibility. Thus, the argument that Defendant ignored the allegations of novelty in the Complaint is 100% true—they were ignored because Defendant is not arguing novelty.

The Motion to Dismiss is built on an entirely different argument: The asserted patent is an abstract idea without any inventive concept and therefore does not satisfy the requirements of § 101. If a new and abstract idea can solve a technical problem facing an industry, that's great—but it is not protectable under patent law.

Here the patent's claims can be performed in the human mind or using a pencil and paper. This is the "telltale sign of abstraction" *Id.* at *9 (quoting Federal Circuit cases going back to 2011). Moreover, the Complaint fails to allege that the asserted claims contain inventive concepts with anything more than conclusory statements. In fact, the Complaint mentions the inventive concept exactly three times:

First in paragraph 18:

> Further, the claims of the Performance Partners Patent contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

Again, at the end of paragraph 21:

> . . . the inventions as claimed capture inventive concepts that transform the inventions into substantially more than the mere practice of monitoring access to a location.

And finally in paragraph 22:

> Indeed, this multi-tiered security scheme is captured by the claims of the '435 Patent, and comprises an inventive concept and technological solution.

These statements merely conclude that the patent contains some inventive concept. But saying it is so, does not make it so. This is why courts give no weight to conclusory statements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In *Trinity*, the court gave this example:

> Trinity's amended complaint states that "the prior art did not include, alone or in any combination" certain features, including (1) real-time matching based on progressive polling, (2) using match servers and a match aggregator, (3) using a mobile device, (4) displaying matches reviewable by swiping, and (5) using a mobile application. J.A. 78 (¶ 32). This conclusion follows several paragraphs that allege the present invention "includes an advance over the prior art and an improvement over a general-purpose computer" because it uses certain features. J.A. 78 (¶ 29) (describing "carrying out one or more operations . . . on a handheld device"); J.A. 78 (¶ 30) (same for "swiping"); J.A. 78 (¶ 31) (same for mobile application). Trinity also alleged that a poll-based networking system matching users in real-time "represents a significant advance over the art." J.A. 77 (¶ 27).

*Trinity*, No. 2022-1308 at *20. The court held that those conclusory allegations were "insufficient to demonstrate an inventive concept." *Id.* at *19-21, citing to Simio, LLC v. Flexsim Software Prods.*, 983 F.3d 1353, 1365 ("A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory."); *and also Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 716 (Fed.

Cir. 2014) ("That some of the eleven steps were not previously employed in this art is not enough—standing alone—to confer patent eligibility upon the claims at issue."). It is worth pointing out that Trinity's failed allegations were far more comprehensive than Plaintiff's.

The chart below demonstrates just how innovative Plaintiff's concept is:

| Ineligibility Chart | |
|---|---|
| Claim: | Human using a pencil and paper: |
| 8. A method for managing entering and exiting of vehicles, said method comprising the steps of: | This is a short story about a parking attendant named Bob: |
| monitoring points of access to an area so as to detect entering and exiting vehicles; | Bob sits in a booth at the entrance to the parking lot; |
| obtaining from each said entering vehicle, entering vehicle identification information comprising at least one electronically readable unique repeatable distinguishing characteristic of said entering vehicle and storing said entering vehicle information in an information management system; | Bob jots down the license plate number on a notepad (his "information management system") for every car that wants to park in his parking lot; |
| offering said entering vehicle a security option comprising:<br>(i) creating a unique random code and associating said random code with said entering vehicle identification information in said information management system; | Bob writes some random code next to the license plate number he just wrote down on his notepad; |
| (ii) forming a Ticket/Tag incorporating said unique random code; and | Bob writes that random code on a ticket; and |
| (iii) providing said Ticket/Tag to an agent of said entering vehicle for later identification of said entering vehicle; | Bob hands the ticket to the driver; |
| obtaining from each said exiting vehicle, exiting vehicle identification information comprising said unique repeatable distinguishing characteristic of said exiting vehicle; | the driver hands the ticket back to Bob and Bob compares the ticket with his notebook entry from earlier; |
| comparing the respective said exiting vehicle identification information with the stored said entering vehicle identification information in said information management system for matching information whereby vehicle identification is confirmed; | Bob confirms that the ticket and the car match; |
| permitting exiting vehicles with said matching information to exit; and | Bob then permits the driver to leave the parking lot; and |
| subjecting exiting vehicles without said matching information to a resolution process. | if the ticket doesn't match—Bob hears excuses for missing tickets all the time—there is a resolution process he is supposed to follow, but he usually just tells the driver to be more careful next time. |

Plaintiff offers the following as an example of why the patent is *not* abstract:

> If anything, the Asserted Claims here are narrowly directed to providing a means for controlling a defined area by managing access points for entering and exiting vehicles utilizing individually-obtained vehicle identification information and offering a security option. (Resp. at 12)

But again, saying it is so, does not make it so. And that one sentence actually does of good job of capturing the abstract nature of the claims. As described in the chart above, when a parking lot attendant writes down your license plate and hands you a ticket coded to that plate number and waives you in, he has just provided "a means for controlling a defined area by managing access points for entering and exiting vehicles utilizing individually-obtained vehicle identification information and offering a security option." Since this is a function easily performed by a person with nothing more than a pen and paper, it is too abstract for patent protection. *Trinity*, No. 2022-1308 at *9.

Conclusory statements abound when Plaintiff attempts to fit its patent within the framework of improving the way computers operate and handle data described in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). Plaintiff argues that the "claims are properly characterized as identifying a "specific" improvement in computer capabilities." Resp. at 9. But this is contradicted by the plain language of patent—there are no improvements in computer capabilities recited in either the specification or the claims. And Plaintiff does not point to any specific improvements in computer capabilities referenced in the patent—just generalities and conclusions.

In contrast, the cases cited by Plaintiff involved technological patents were legitimately directed to improving computer networks. *See* Resp. at 9, *citing TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020)(patent for "Distributed Cryptographic Object Method"); *SRI Int'l, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295 (Fed. Cir. 2019) ("Network Surveillance"); *Ancora Techs., Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018) ("A method of restricting software operation within a license for use with a computer including an erasable, non-volatile memory area of a BIOS of the

computer, and a volatile memory area"); *Data Engine v. Google*, 906 F.3d 999 (Fed. Cir. 2018) ("System and Methods for Improved Spreadsheet Interface With User-Familiar Objects"); and *Finjan v. Blue Coat Systems*, 879 F.3d 1299 (Fed. Cir. 2018) (several patents for "identifying and protecting against malware"). While an in-depth analysis of those cases and their patents is beyond the scope of this brief, the topics of each patent reveal that they are directly related to improvements in computer and network capabilities. This is in stark contrast to Plaintiff's patent which is merely a "system for securing areas of use of vehicles." While off-the-self computes can be used to help implement the patent's method, those computers are used in their conventional manner. *See Alice v. CLS Bank* 134 S. Ct. 2347, 2359 (2014)("generic computer" performing "generic computer functions" does not support § 101 eligibility). In short, Plaintiff's patent is for parking cars, not improving how computers function.

Each of the Patent's claims are directed to the abstract idea of monitoring and controlling vehicle access and do not contain an "inventive concept sufficient to ensure that the patents in practice amount to significantly more than a patent upon the ineligible concept itself." *Id.* at 2355, *quoting Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012). If a claim can be performed in the human mind, or by a human using pen and paper—as this patent can—it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).

**B.    Claim 8 *is* Representative**

The Motion to Dismiss paid little attention to the difference between the independent claims because those differences are trivial. In fact, those differences were comprehensively addressed in just two sentences on page 4 of the motion:

> Claim 1 is nearly identical to Claim 8 but substitutes the words "onboard-identity/signature" for "distinguishing characteristic." *Id.* (*compare* 10:59 *with* 12:7-

8). Claim 15 merely refers to a "vehicle" as a "mobile entity" and adds an element that the random code be decoded prior to the comparison step. *Id.* (*compare* 12:1 *with* 13:9-10).

These minor variations do not fundamentally alter the nature of the claims or the fact that they are directed to the same abstract idea. Plaintiff argues that Claim 11 adds an "unconventional application of departure times into the authorization routine." But this is a trivial variation and can also easily be performed by a person with a pen and paper. If the independent claims are not eligible for patent protection, nothing in the dependent claims makes them any more eligible. *See Trinity Info Media, LLC v. Covalent, Inc.*, 2023 U.S. App. LEXIS 17902, *11 (dependent claims not consider where they "merely add trivial variations of the abstract idea").

Moreover, there is nothing in the Complaint to indicate that Plaintiff is asserting any of the dependent claims against Defendant. Plaintiff's infringement contentions were due weeks ago, but because Plaintiff failed to provide them, the Court should presume that any claims not explicitly mentioned in the Complaint have not been brought against Defendant.

C. **Plaintiff has waived any claim construction or discovery at this stage**

The Complaint is ripe for dismissal at this stage. The Federal Circuit routinely affirms § 101 rejections at the motion to dismiss stage without the need for any claim construction or discovery. *Trinity.*, No. 2022-1308 at *6-7. The Plaintiff carries the burden to prove that some claim construction or discovery would be necessary. *Id.* at *7. But Plaintiff has failed to carry that burden because it has not proposed a specific claim construction, and has not identified any specific facts that need development and explained why. *Id.* at *7. As the Federal Circuit explained:

> A patentee must do more than invoke a generic need for claim construction or discovery to avoid grant of a motion to dismiss under § 101. Instead, the patentee must propose a specific claim construction or identify specific facts that need

> development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes.

*Id.* Plaintiff has done none of these things, so no claim construction or discovery is required. The Court should only consider the patent claims for its eligibility analysis, and only look to the Complaint to see what specific claims are alleged against Defendant. To the extent no claim that is eligible for patent protection under § 101 was alleged to have been infringed by Defendant, the Complaint must be dismissed.

### D. Plaintiff Has Failed to Comply With Local Patent Rule 3

As mentioned above, Plaintiff has failed to provide its infringement contentions. Local Patent Rule 3-1(a) requires Plaintiff to serve a "disclosure of asserted claims and preliminary infringement contentions, and file notice of such service with the clerk" no later than 7 days before the initial case management conference. Additionally, there are supporting documents that Plaintiff is required to produce along with its disclosures. Plaintiff has not produced these either. Local Patent Rule 3-1(b) notes that: "Failure to comply with the requirements of this paragraph, including the requirement of specificity and detail in contending infringement, may result in appropriate sanctions, including dismissal."

Plaintiff has not filed notice with the clerk because it has not complied with this local rule. This is no small failure and has already derailed this case. The fact that Plaintiff has not provided the information, charts, and documents required under this rule means that they were never ready to proceed with this litigation. If Plaintiff is not going to take the prosecution of its case seriously, then neither should the Court. Therefore, this case should be dismissed.

## Conclusion

Plaintiff's arguments largely mistake novelty for eligibility. But new abstract ideas are no more patentable than old abstract ideas. Each of the patent's claims are directed to the same abstract idea of monitoring and controlling vehicle access, and there is no inventive concept that raises the patent above this ineligible concept. Since the patent is invalid on its face—and Plaintiff has shown that it is not prepared to proceed with this case in accordance with the rules—this case should be dismissed with prejudice.

Dated: July 21, 2023  Respectfully submitted,

        */s/ Brian Casper*
        Darin M. Klemchuk
        Texas Bar No. 24002418
        darin.klemchuk@klemchuk.com
        Brian Casper
        Texas Bar No. 24075563
        brian.casper@klemchuk.com
        **KLEMCHUK PLLC**
        8150 N. Central Expressway, 10th Fl.
        Dallas, Texas 75206
        Tel: (214) 3676000
        Fax: (214) 367-6001

        Chris Hanslik (Lead Counsel)
        Texas Bar No. 00793895
        chanslik@boyarmiller.com
        **BOYARMILLER**
        2935 Richmond Avenue 14th Fl.
        Houston, Texas 77098

        ***Attorneys For Defendant***
        ***Nextgen Parking, LLC***

## CERTIFICATE OF SERVICE

    I hereby certify that this document is being served on all counsel of record via the Court's ECF system on July 21, 2023.

        */s/ Brian Casper*