# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| PERFORMANCEPARTNERS LLC | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-0564-S |
| | § | |
| NEXTGEN PARKING, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant NextGen Parking, LLC's Motion to Dismiss ("Motion")
[ECF No. 12]. The Court has reviewed the Motion, Plaintiff PerformancePartners LLC's Brief in
Opposition to Motion to Dismiss ("Response") [ECF No. 15], Defendant's Reply in Support of
Motion to Dismiss ("Reply") [ECF No. 19], and the applicable law. For the following reasons, the
Court **GRANTS** the Motion.

### I. BACKGROUND

On April 28, 2009, the United States Patent and Trademark Office issued U.S. Patent
No. 7,525,435 ("'435 Patent"). Original Compl. for Patent Infringement ("Complaint") [ECF
No. 1] ¶¶ 8-9. The '435 Patent was issued to its sole named inventor, C. Joseph Rickrode, who
assigned all rights, title, and interest in the patent to PerformancePartners LLC (of New
Hampshire), who in turn assigned all rights, title, and interest in the patent to Plaintiff
PerformancePartners LLC (of Texas). *Id.* ¶ 9. The '435 Patent concerns "methods and systems for
securing, protecting, and controlling defined areas by managing access points for entering and
exiting vehicles or mobile entities, and matching entering vehicle or mobile entity identification
information with exiting identification information." *Id.* ¶ 14 (citation omitted). The nominal
expiration date for the '435 Patent is no earlier than March 11, 2027. *Id.* ¶ 29.

The '435 Patent consists of twenty claims, three of which are independent.[1] The three independent claims—Claims 1, 8, and 15—each outline steps to manage vehicle access points. *See* '435 Patent [ECF No. 12-1] 10:53-11:15, 12:1-32, 13:9-14:11.[2] The remaining dependent claims supplement the independent claims. *See id.* 11:16-67, 12:33-13:8, 14:12-35.

Relevant here is Claim 8, which is the only claim Plaintiff names in the Complaint and is the claim that Defendant NextGen Parking, LLC, argues is representative of all the claims. *See* Compl. ¶ 34; Mot. 3. Claim 8 reads:

> A method for managing entering and exiting of vehicles, said method comprising the steps of:
> monitoring points of access to an area so as to detect entering and exiting vehicles;
> obtaining from each said entering vehicle, entering vehicle identification information comprising at least one electronically readable unique repeatable distinguishing characteristic of said entering vehicle and storing said entering vehicle information in an information management system;
> offering said entering vehicle a security option comprising:
> (i) creating a unique random code and associating said random code with said entering vehicle identification information in said information management system;
> (ii) forming a Ticket/Tag incorporating said unique random code; and
> (iii) providing said Ticket/Tag to an agent of said entering vehicle for later identification of said entering vehicle;
> obtaining from each said exiting vehicle, exiting vehicle identification information comprising said unique repeatable distinguishing characteristic of said exiting vehicle;
> comparing the respective said exiting vehicle identification information with the stored said entering vehicle identification information in said information management system for matching information whereby vehicle identification is confirmed;
> permitting exiting vehicles with said matching information to exit; and
> subjecting exiting vehicles without said matching information to a resolution process.

---

[1] An independent claim is "completely self-contained" while a dependent claim "refers to and incorporates the limitations of another claim." *Oreck Holdings, LLC v. Dyson, Inc.*, 434 F. Supp. 2d 385, 390 n.2 (E.D. La. 2006) (citation omitted).

[2] The Court's citations to the '435 Patent refer to the column and line numbers in the patent document.

'435 Patent 12:1-32. Claim 1 proposes the same seven steps with slightly different wording. *See id.* 10:53-11:15. Claim 15 proposes the same process, again with slightly different wording, but with an eighth step of decoding the random code assigned to the entering mobile entity. *See id.* 13:9-14:11.

Defendant controls parking and/or toll facilities in Texas. Compl. ¶ 2. According to Plaintiff, Defendant runs its facilities using technology that infringes on the '435 Patent. *See id.* ¶¶ 31-47. Specifically, Plaintiff alleges that Defendant's use of technology to manage vehicles using an interconnected system to monitor points of access, obtain vehicle information, provide a ticket or tag, compare vehicle information, and subject certain vehicles to a resolution process infringes on the claims in the '435 Patent. *See id.* ¶ 30. Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) because the '435 Patent is invalid under 35 U.S.C. § 101. Mot. 1.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008).[3] To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a

---

[3] "Federal Circuit law governs questions involving substantive issues of patent law." *Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, 605 F. Supp. 3d 905, 910 (W.D. Tex. 2022) (citing *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015)). However, "[a] motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007) (citing *C & F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000)). Procedural law is determined by the law of the regional circuit. *Id.* at 1356. Therefore, the Court looks to Federal Circuit precedent to determine if the '435 Patent is valid and Fifth Circuit precedent for its Rule 12(b)(6) standards.

3

defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

"The Federal Circuit has confirmed that determining patent eligibility under § 101 is appropriate at the pleadings stage[ because] '[i]ssues of patent-eligible subject matter are questions of law.'" *Affinity Labs of Tex., LLC v. DirecTV, LLC*, 109 F. Supp. 3d 916, 931 (W.D. Tex. 2015) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011)), *aff'd*, 838 F.3d 1253 (Fed. Cir. 2016). In conducting its analysis, a court may consider the contents of the patent itself when it is attached to the motion to dismiss, referred to in the complaint, and central to the plaintiff's claim. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

### III. ANALYSIS

Defendant asks the Court to dismiss this case because the '435 Patent is not valid. The only valid patent-eligible subject matter is "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023) (quoting 35 U.S.C. § 101). A patent's claims are of "primary importance" in ascertaining what is patented. *AIP Acquisition LLC v. Cisco Sys., Inc.*, 714 F. App'x 1010, 1014 (Fed. Cir. 2017) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)). A patent's claims are presumptively valid. 35 U.S.C. § 282(a).

4

Rather than challenge the validity of all twenty claims of the '435 Patent, Defendant argues that Claim 8 is representative. Mot. 3-4. Plaintiff disagrees. Resp. 13-14. Accordingly, the Court begins with whether Claim 8 is representative of all the claims. The Court then analyzes whether the '435 Patent is valid under Section 101.[4]

### A. Representative Claim

Defendant asserts that Claim 8 is representative because it recites the same abstract idea of monitoring and controlling vehicles as the two other independent claims. Mot. 3-4. According to Defendant, each of the independent claims involve the same processes, and although the words used to describe the processes vary, these minor changes do not fundamentally alter the nature of the claims. *Id.* at 4. Defendant further contends that the dependent claims do not alter the analysis and "simply recite post-solution limitations or elements performed by a computer." *Id.* Plaintiff responds that Defendant has not overcome the presumption of validity and, by way of example, points to Claim 11 as not being represented by Claim 8 because only the former considers departure times. Resp. 13-14.

A court does not need to address each claim in a validity analysis when "all [of a patent's] claims are substantially similar and linked to the same abstract idea." *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 n.9 (Fed. Cir. 2016) (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)). A claim that is substantially similar to, and linked to the same abstract idea as, the remaining claims is considered representative. *See Content Extraction & Transmission*, 776 F.3d at 1348. The

---

[4] The Court recognizes that another district court previously ruled that the '435 Patent is invalid under Section 101. *See PerformancePartners, LLC v. FlashParking, Inc.*, No. WA-23-CV-130-KC, 2023 WL 6617395 (W.D. Tex. Oct. 11, 2023). However, the Federal Circuit has "rejected *stare decisis* as generally inappropriate on the issue of validity of a patent." *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed. Cir. 1993) (citation omitted). The Court "give[s] weight" to the prior holding but still performs an independent analysis. *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 711 (Fed. Cir. 1983).

burden of proving that a claim is representative is on the movant. *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-CV-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (citation omitted). If the movant meets its burden, a court can resolve validity challenges to all claims by analyzing the representative claim. *See, e.g., Intell. Ventures I*, 838 F.3d at 1316-17 (determining that a patent was invalid under Section 101 based on the analysis of a representative claim); *Becton, Dickinson & Co. v. Baxter Int'l, Inc.*, 127 F. Supp. 3d 687, 689 (W.D. Tex. 2015) ("Claim 1 of the [patent] is representative for the purposes of the court's Section 101 analysis."), *aff'd*, 639 F. App'x 652 (Fed. Cir. 2016). The Court concludes that Defendant has met its burden.

Defendant correctly states that each independent claim is linked to the same abstract idea. Mot. 3-4. Claims 1, 8, and 15 each begin with the same epigraph: "A method for managing entering and exiting of vehicles."[5] '435 Patent 10:53-54, 12:1-2, 13:9-10. Each independent claim relates to managing vehicles entering and exiting a facility, which as discussed below is directed at an abstract idea. *See Semantic Search Techs. LLC v. Aldo U.S., Inc.*, 425 F. Supp. 3d 758, 772 (E.D. Tex. 2019) (finding claims directed to the same abstract idea because each related to the abstract ideas of "collecting information, analyzing it, and displaying certain results of the collection and analysis" (citation omitted)).

The independent claims are also substantially similar because they follow the same steps with only minor language differences. Claim 8 invokes a seven-step process: (1) monitor a certain area, (2) collect and electronically store unique identifying information from each entering vehicle, (3) assign each entering vehicle a randomly coded ticket with its unique identifying information, (4) detect the unique identifying information from each exiting vehicle, (5) compare the exiting vehicle's information against the stored entering vehicle's information, (6) permit matching

---

[5] Claim 15 references "mobile entities" instead of vehicles.

vehicles to exit, and (7) subject nonmatching vehicles to a "resolution process." *See* '435 Patent 12:1-32. In sum, Claim 8 recounts a method for collecting information at a vehicle entrance, storing that information, and then comparing that information against information collected at a vehicle exit. Claims 1 and 15 recite a near verbatim process. *See id.* 10:53-11:15, 13:9-14:11. Claim 15 includes one additional step: decoding the random code on the ticket, *id.* 13:34-37, but this addition does not change the substantial similarity of the processes. Nor do the minor differences in wording between the claims. Claim 15 refers to mobile entities instead of vehicles, *see id.* 13:9-14:11, and Claim 1 collects vehicle information in the form of a "unique repeatable onboard-identity/signature" instead of a "unique repeatable distinguishing characteristic" of the vehicle, *compare id.* 10:57-61 *with id.* 12:5-10; *see also id.* 13:6-8 (having Claim 8 look for a "unique repeatable on-board identity/signature"). The Court finds these differences to be of little import when it comes to analyzing the substantial similarity between the independent claims. *See Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1327 (Fed. Cir. 2004) (finding a claim representative because it was "identical in pertinent part" to the other claims).

Defendant states that the dependent claims do not alter the analysis and "simply recite post-solution limitations or elements performed by a computer." Mot. 4. The Court agrees. Each dependent claim presents supplemental information or an alternative means of managing entering and exiting vehicles. Claims 2 and 9 concern assigning and decoding a random code under Claims 1 and 8, respectively. *See* '435 Patent 11:16-37, 12:33-53. Claims 3 and 10 state that Claims 2 and 9, respectively, can include a time of entry on the ticket. *See id.* 11:38-40, 12:54-56. Claims 4, 5, 11 and 12 incorporate entry and departure schedules as another way to identify vehicles. *See id.* 11:41-55, 12:57-13:1-2. Claims 6 and 13 add an alternate method of obtaining vehicle characteristics by scanning them. *See id.* 11:56-61, 13:3-5. Claim 7 states that vehicle identifying

characteristics include distinguishing factors like the VIN or shape, *see id.* 11:62-67, while Claim

14 says that Claim 8 may consider a unique repeatable on-board identity/signature, *see id.* 13:6-8.

Finally, Claims 16 through 20 supplement Claim 15 by allowing use of a unique tracking number,

entry and exit time, a ticket or tag sealed on a vehicle, giving the ticket/tag to an agent of the

vehicle, and exchanging the collected information "with other information management systems."

*See id.* 14:12-35. These are minor variations that do not change the focus of the claims. *See Trinity*,

72 F.4th at 1362 (holding that "trivial variations . . . do not change the focus of the asserted claims"

(citation omitted)); *Becton*, 127 F. Supp. 3d at 689 n.3 (finding that the court did need not need to

consider dependent claims that "introduce only slight variations of the independent claims"

(citation omitted)). The Court thus finds that Claim 8 is representative of all claims at issue because

they are substantially similar and directed at the same abstract idea.

The Court is not persuaded by Plaintiff's contention that Claim 8 is not representative of

by Claim 11 because it adds "the unconventional application of departure times into the

authorization routine." Resp. 13-14. Although Claim 11 provides an alternative type of data to be

collected upon entry for comparison upon exit, it is still aimed at the same abstract idea of

managing entering and exiting vehicles, and the addition to the base process is trivial. *See Trinity*,

72 F.4th at 1362 (finding that performing matches based on gender, varying the number of

questions asked, and displaying other users' answers were "trivial variations" of matching

individuals). Plaintiff does not address whether any of the other claims are represented by Claim

8. In fact, Plaintiff appears to treat Claim 8 as representative by exclusively citing to it for the

proposition that the patent was infringed. *See* Compl. ¶ 34. In other words, Plaintiff has not

presented any meaningful argument for the distinctive significance of the other claims. *See*

*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as

representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim[.]" (citation omitted)). For this additional reason, the Court concludes that Claim 8 is representative.

Because Claim 8 is representative of each of the remaining claims, the Court need only consider Claim 8 in its patent validity analysis.

### B. Patent Validity

Courts perform a two-step analysis to determine if a patent is valid under Section 101. First, the court considers whether the patent's claims are "directed to" a patent-ineligible concept. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 77 (2012)). Laws of nature, natural phenomena, and abstract ideas are not patent-eligible concepts. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1314 (Fed. Cir. 2019) (citing *Alice*, 573 U.S. at 216). If the patent is directed to any of these ineligible concepts, the court moves on to *Alice* step two and considers whether the patent includes an "inventive concept" that ensures the patent is "significantly more" than its ineligible concept. *Id.* at 1315 (quoting *Alice*, 573 U.S. at 217-18). If a patent is directed to a patent-ineligible concept and lacks an inventive concept, then it is invalid under Section 101. *Tranxition, Inc. v. Lenovo (U.S.) Inc.*, 664 F. App'x 968, 972 (Fed. Cir. 2016).

### i. Alice *Step One*

The first step of the *Alice* inquiry looks at the "focus" of a patent's claims. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F .3d 1350, 1353-56 (Fed. Cir. 2016)). It is not enough that the patent involves a patent-ineligible concept; its "character as a whole [must be] directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Internet Pats. Corp. v.*

*Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). To test whether the patent's character as a whole is directed to excluded subject matter, courts "look at the focus of the claimed advance over the prior art." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149 (Fed. Cir. 2019) (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)).

As to the focus of the '435 Patent, Defendant maintains it is to "automate the process of monitoring and controlling vehicle access." Mot. 5. Plaintiff counters that the patent focuses on "advancing over the prior art by providing a means for controlling a defined area by managing access points for entering and exiting vehicles utilizing individually-obtained vehicle identification information and offering a security option." Resp. 9. (citation omitted). Plaintiff also describes the focus as "directed to non-abstract improvements in the functionality of computers." *Id.*

The Court looks to both the text of the '435 Patent and to Plaintiff's allegations regarding the '435 Patent to ascertain its focus. In its Complaint, Plaintiff alleges that "the '435 Patent relates generally to methods and systems for securing, protecting, and controlling defined areas by managing access points for entering and exiting vehicles or mobile entities, and matching entering vehicle or mobile entity information with exiting identification information" Compl. ¶ 14 (citation omitted). Plaintiff acknowledges that managing entering and exiting vehicles is not new. At the time the '435 Patent was first filed in 2005, "the conventional technology for managing access points for entering and exiting vehicles was embodied in physical cards carried by the driver or passenger . . . [or] Radio Frequency Identification ('RFID') tags located in such vehicles." *Id.* ¶ 15. This technology was "highly problematic" and cost facility operators "millions of dollars." *Id.* ¶ 16. "The inventions as claimed in the '435 Patent overcame the deficiencies in the art by offering the unconventional approach of incorporating technology for obtaining vehicle characteristics

10

upon entry and exit." *Id.* The "fundamental characteristics and distinction" of the '435 Patent, then, is its system of identifying the characteristics of a vehicle and storing the data for future use. '435 Patent 5:1-14. The claims, as represented by Claim 8, outline the steps the computer system would work through for each new vehicle. *See id.* 12:1-32. While none of the claims mention a computer, the Summary of the Invention[6] explains that the '435 Patent works by using a computer or information sensing device that can sense a vehicle code, detect characteristics of a vehicle, assign a unique signature to each vehicle, and store the data. *See id.* 2:64-3:43. Plaintiff also describes the '435 Patent as "represent[ing] technological improvements to the operation of computers as tools of trade." Compl. ¶ 19. Based on the language of the '435 Patent and Plaintiff's allegations, the Court concludes that the focus of '435 Patent is to use computer technology to automatically identify and track vehicles for entry and exit from a secure facility.

Turning next to whether this focus is directed at an abstract idea, Defendant asserts that the '435 Patent is directed at an abstract idea because it automates a conventional method of organizing human activity and that the '435 Patent is distinguishable from non-abstract patents that improve the way a computer works. Mot. 5-7. Plaintiff responds that the patent is directed at non-abstract improvements under *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020), because the '435 Patent arises in the realm of computers and is directed to software improvements. Resp. 8-9.

Information is intangible, and hence abstract. *SAP Am.*, 898 F.3d at 1167 (citing *Elec. Power Grp.*, 830 F.3d at 1353). The Federal Circuit has "consistently treated inventions directed to collecting, analyzing, and displaying information as abstract ideas." *In re Downing*, 754 F. App'x 988, 993 (Fed. Cir. 2018) (citing *Elec. Power Grp.*, 830 F.3d at 1354). Functions like "data

---

[6] While the Section 101 inquiry focuses on the language of the claims themselves, a patent's specification information "may nonetheless be useful in illuminating whether the claims are 'directed to' the identified abstract idea." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) (citations omitted).

11

collection, recognition, and storage [are] undisputedly well-known," and "humans have always performed these functions." *Content Extraction & Transmission*, 776 F.3d at 1347. The Federal Circuit has also found patents to be directed at an abstract idea where humans could perform the patented task in their minds or with pen and paper. *See In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022) ("[I]f a claim's steps 'can be performed in the human mind, or by a human using a pen and paper,' . . . the claim is for a[n] . . . abstract idea." (citation omitted)), *cert. denied sub nom. Killian v. Vidal*, 144 S. Ct. 100 (2023), *reh'g denied*, 144 S. Ct. 441 (2023). With patents involving computers, courts question "whether the claims are directed to a specific improvement in the capabilities of computing devices, or, instead, a 'process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361-62 (Fed. Cir. 2018) (quoting *Enfish*, 822 F.3d at 1336).

The focus of the '435 Patent—using computers to automate the process of identifying and tracking vehicles—is directed at the abstract ideas of collecting information and automating human activity. *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1012-13 (Fed. Cir. 2018) (determining that a method for tracking changes between spreadsheets was directed at an abstract idea and that the abstraction was not negated by "mere automation" through computers). Claim 8 operates by collecting information at a vehicle entrance, storing that information, and then comparing that information against information collected at a vehicle exit. *See* '435 Patent 12:1-32. A patent is directed at an abstract idea when, as here, it "recite[s] nothing more than a process of gathering, analyzing, and displaying certain results." *Ubisoft Ent., S.A. v. Yousician Oy*, 814 F. App'x 588, 590-91 (Fed. Cir. 2020). Additionally, the patent focuses on automating an activity that can be done by hand. As Defendant correctly points out, Claim 8's process of collecting information at a vehicle entrance, storing that information, and then comparing that information

against information collected at a vehicle exit can be done by a person with a pen and paper. *See* Reply 4.[7] "[T]he use of computers to 'conserve human resources' by automating work otherwise performed through human labor" does not bring a claim out of the realm of abstractness. *See Enco Sys., Inc. v. DaVincia, LLC*, 845 F. App'x 953, 957 (Fed. Cir. 2021) (citation omitted).

Claim 8 is analogous to several patents that have been found to be directed at abstract ideas. In *Planet Bingo, LLC v. VKGS LLC*, the Federal Circuit considered a patent to manage the game of bingo. *See* 576 F. App'x 1005, 1006 (Fed. Cir. 2014). The patent did this by "storing a player's preferred sets of bingo numbers; retrieving one such set upon demand, and playing that set; while simultaneously tracking the player's sets, tracking player payments, and verifying winning numbers." *Id.* The court held that the patent was directed at an abstract idea because it was an effort to organize human activity by "solving a tampering problem and also minimizing other security risks during bingo ticket purchases" *Id.* at 1008 (cleaned up). This work "consist[ed] solely of mental steps which can be carried out by a human using pen and paper." *Id.* at 1007 (citation omitted). The '435 Patent focuses on the same abstract idea. Like the *Planet Bingo* patent, the '435 Patent attempts to solve the problem of tracking vehicles to ensure payment by collecting information, tracking user data, and retrieving the information upon demand. And also like the *Planet Bingo* patent, the steps in the '435 Patent can be performed by a person in their mind or with pen and paper.

Claim 8 is also analogous to the patents in *Weisner v. Google LLC*, 51 F.4th 1073 (Fed. Cir. 2022). There, the Federal Circuit considered two patents for a digital travel log that worked

---

[7] Plaintiff argues that doing this work by hand does not provide the same benefits of the '435 Patent, such as greater revenue, improved safety, and less errors. *See* Resp. 10. However, the fact that a computer can more efficiently perform this process "does not materially alter the patent eligibility of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).

by "collect[ing] information on a user's movements and location history [and] electronically record[ing] that data." *Id.* at 1081-82 (alterations in original) (citation omitted). Both patents created and/or used physical location histories by tracking a user through either their handheld phone or network. *See id.* at 1082. The Federal Circuit concluded that these patents' claims were directed at an abstract idea because "[h]umans have consistently kept records of a person's location and travel in the form of travel logs, diaries, journals, and calendars, which compile information such as time and location." *Id.* at 1082-83 (alteration in original) (citation omitted). The court reasoned that the "[a]utomation or digitization of a conventional method of organizing human activity like the creation of a travel log on a computer does not bring the claims out of the realm of abstractness." *Id.* at 1083 (citation omitted). The court rejected the patentee's argument that the patents improved the computer system itself because, among other reasons, the claims only used "generic elements" and "a high level of generality" to describe how the system worked. *Id.* (citation omitted). The '435 Patent suffers from the same defects. As was the case with the patents in *Weisner*, the '435 Patent seeks to automate and digitize a process—controlling vehicle access to a facility—utilized long before the patent was issued. Similar to the *Weisner* patents, Claim 8 does this by collecting and comparing vehicle information. Also like the patents in *Weisner*, the '435 Patent does not specify the precise methods the computer will use to perform the required tasks. Instead, the patent, as exemplified by Claim 8, only explains at a high level of generality that the system will "obtain[]" identification information, will "create[]" a unique code, and will "compar[e]" the information between entering and exiting vehicles. *See* '435 Patent 12:1-32.

Plaintiff argues that the '435 Patent is not directed at an abstract idea because it both arises in the realm of computers and is properly characterized as an "improvement" in computer capabilities or network functionality. Resp. 8-9 (citing *TecSec*, 978. F.3d at 1293). Although the

14

'435 Patent arises in the realm of computers, it is not directed at improving computer capabilities

or network functionality. A computer-based improvement is directed at an abstract idea when it

"merely seeks to use computers as a tool" as opposed to identifying a "specific" improvement in

the computer's capabilities. *Trinity*, 72 F.4th at 1363 (citations omitted); *TecSec*, 978 F.3d at 1293

(citation omitted). Claim 8 uses computers as a tool to collect information at a vehicle entrance,

store that information, and then compare that information against information collected at a vehicle

exit. Nowhere in the '435 Patent—Claim 8 or otherwise—does it specify how the computers will

accomplish these goals at a technical level; the patent assumes that a computer can be used to

perform the requisite tasks. Thus, the use of computers "merely provide[s] a generic environment

in which to carry out the abstract idea" of storing and comparing information. *In re TLI Commc'ns*

*LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016); *see also Enco Sys.*, 845 F. App'x. at 957 ("The

advance is only at the abstract level of computerization because [the claim] fails to set forth specific

techniques for processing the data, instead reciting known computer techniques for automation of

known processes." (citation omitted)).

Another indicator that the '435 Patent uses computers as tools is the variability of the

computer that can be used. The patent acknowledges that "there may be variations" in the computer

used to capture, store, and analyze data. '435 Patent 2:64-67. To account for these variations, the

'435 Patent lists certain minimum capabilities the computer must have. *Id.* 3:2-43; *see also id.*

4:23-33 (noting that a computer with such capabilities is the "'preferred' embodiment of the

invention")). Moreover, the patent does not specify what type of sensors the user needs. *See id.*

7:28-30 ("The sensor system may be a plurality of camera systems[] (digital video, magnetic video

or any other form of image capture)."). Rather than provide specific improvements to make a

computer capable of performing these tasks, the '435 Patent instructs the user to find a computer

that can already do them. "These passages confirm that the problem facing the inventor was how to perform the abstract idea[,] . . . not an improvement to computer technology." *Trinity*, 72 F.4th at 1363.

Because the '435 Patent is directed at a patent-ineligible abstract idea, the Court next considers whether it contains an inventive element.

### ii. Alice *Step Two*

The second step of the *Alice* inquiry asks the court to "determine whether the claims do significantly more than simply describe [an] abstract method." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (citing *Mayo*, 566 U.S. at 77). To meet this requirement, a claim needs "an inventive concept in the non-abstract application realm." *SAP Am.*, 898 F.3d at 1168. Courts test this by "examin[ing] the limitations of the claims to determine whether the claims contain an 'inventive concept' to 'transform' the claimed abstract idea into patent-eligible subject matter." *Ultramercial*, 772 F.3d at 715 (quoting *Alice*, 573 U.S. at 221). To qualify as transformative, a patent's claims must do more than simply state the abstract idea while adding words like "apply it"; the claims must include "additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* (cleaned up). These additional features must be more than "well-understood, routine, conventional activity." *Id.* (quoting *Mayo*, 566 U.S. at 79). Thus, the Court's analysis proceeds in two parts. First, the Court will identify the allegedly inventive concept in the '435 Patent. Second, the Court will determine whether that concept is sufficiently inventive to transform the '435 Patent's abstract idea into patent-eligible subject matter.

In its Response, Plaintiff frames the inventiveness of the patent in several ways, but each has to do with using computer technology to automate the entering and exiting of vehicles from a secure facility. According to Plaintiff, the '435 Patent is inventive because: "the conventional

technologies of the time did not in any sense utilize comparable technologies," Resp. 2; the use of Automatic Number Plate Recognition ("ANPR") would not be adopted by the industry until seven years after invention, *id.* (citing Compl. ¶ 15); the invention "unconventionally obtain[s] vehicle characteristics upon entry and exit," *id.* at 4; the patent "provide[s] a technological solution to a technological problem," *id.* (citation omitted); the invention offers "effective identification, monitoring[,] and in some circumstances even control over vehicle access" and "[f]ormerly, there were no systems which were able to carry out such methods," *id.* at 5; the patent "modif[ies] the standard vehicle access control paradigm," *id.* at 6; the claims capture "unconventional technological improvements over the art," *id.* at 7; and the invention "control[s] access using an entirely different basis (*i.e.*, vehicle information) as compared to the state of the art," *id.* Each of these arguments rest in the realm of computer enhancements or the benefits from those enhancements. Plaintiff does not—nor could it—claim that the '435 Patent creates a new model for managing vehicle access. Prior to the invention of the '435 Patent, facility operators collected information at an entrance, stored that information, and compared it to information collected at an exit. *See* Compl. ¶ 15 (explaining that vehicle entry and exit was previously managed by information on physical cards or tags). The baseline of collecting information at a vehicle entrance, storing that information, and then comparing that information against information collected at a vehicle exit is no different between Claim 8 and the prior art. The Court therefore concludes that the proposed inventive concept is that the '435 Patent applies unconventional technology (ANPR and scanner computers) in an unconventional way (seven or eight specific steps) to a conventional process (vehicle management).

As to whether the concept is sufficiently inventive, Defendant states that the '435 Patent is not inventive because it merely recites a set of functional steps to be carried out by a generic

computer in a conventional fashion. Mot. 7-8. Defendant further contends that the patent does not involve any unconventional technological solutions to a technological problem. *Id.* at 8. Plaintiff responds that these assertions are an overgeneralization and ignore the meaningful limitations of the claims. Resp. 12. Pointing to Claim 8, Plaintiff argues that its unconventional seven-step process elevates the claim above mere automation. *Id.* Plaintiff claims that the benefits from the process are evidence of a technological improvement. *Id.* at 4.

The Court concludes that the '435 Patent's alleged inventive concept is not transformative because it invokes only generic computer usage to execute its abstract idea. As discussed above, Claim 8 proceeds by listing seven steps to manage entering and exiting vehicles. At each step the computer's task is summarized with generic, high-level terms: "monitoring" points of access; "obtaining . . .electronically readable" vehicle information and "storing" that information; "offering" a security option by "creating" a code, "associating" the code with a vehicle, "forming" a ticket, and "providing" the ticket to the vehicle; "obtaining" vehicle information from exiting vehicles; "comparing" the information between entering and exiting vehicles; "permitting" vehicles with matching information to leave; and "subjecting" those without matching information to a resolution process. '435 Patent 12:1-32.[8] Claim 8 identifies no inventive method or new claim of technology by which a computer performs any of these tasks.

Plaintiff does not even specify the type of computer or scanner to use. Instead, the patent's specifications ask the user to find a computer that can by design already perform the desired task. *See id.* 2:64-3:43. The '435 Patent "require[s] no improved computer resources[,] . . . just already available computers, with their already available basic functions, to use as tools in executing the claimed process." *SAP Am.*, 898 F.3d at 1169-70. Such an invocation of computers is "not enough

---

[8] While the Court need only look to Claim 8 because it is representative, all twenty claims use generic terminology to describe what a computer shall do, not how to do it.

to establish the required 'inventive concept' in application" as an "invocation of already-available computers that are not themselves plausibly asserted to be an advance, for use in carrying out [an abstract idea], amounts to a recitation of what is 'well understood, routine, [and] conventional.'" *Id.* at 1170 (quoting *Mayo*, 566 U.S. at 73 (second alteration in original)); *see also Intell. Ventures I*, 838 F.3d at 1315 ("Claims that amount to nothing significantly more than an instruction to apply an abstract idea using some unspecified, generic computer and in which each step does no more than require a generic computer to perform generic computer functions do not make an abstract idea patent-eligible." (cleaned up)); *Affinity Labs of Tex.*, 838 F.3d at 1263 (holding that a patent is insufficiently inventive where it "simply recites that the abstract idea . . . will be implemented using the conventional components and functions generic to [the relevant technology]").

The fact that Claim 8 uses seven steps—even if those specific steps had never been used before 2005—does not make the patent inventive. The process represented by those seven steps was already being performed in the art and "the claimed combination of steps adds nothing inventive." *CareDx, Inc. v. Natera, Inc.*, 40 F.4th 1371, 1380 (Fed. Cir. 2022), *cert. denied*, 144 S. Ct. 248 (2023). Claim 8 merely "confirms that the claimed combination of steps . . . was a straightforward, logical, and conventional method" for managing vehicle access. *Id.*; *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1341 (Fed. Cir. 2017) ("Nor do we see any inventive concept in the ordered combination of these steps[ since] [t]he steps are organized in a completely conventional way[.]"); *Ultramercial*, 772 F.3d at 716 ("That some of the eleven steps were not previously employed in this art is not enough—standing alone—to confer patent eligibility upon the claims at issue.").

Plaintiff's arguments that the '435 Patent is inventive because of its unconventional application of technology is unpersuasive for at least three reasons.[9] First, Plaintiff's claims of novel technology are not supported by the patent itself. According to Plaintiff, the patent utilized ANPR technology, which the industry would not adopt for another seven years. Resp. 2; Compl. ¶ 15. However, nowhere in the patent does it state that it uses ANPR technology. The patent only requires a computer that can "detect[] . . . select characteristics of the vehicle such as . . . [its] license plate," as well as "camera(s), sensor(s) or other forms of detection and recordation device(s)" to record vehicle information like a license plate. '435 Patent 3:9-13, 5:45-53. The specification does not indicate that this technology was unconventional at the time. To the contrary, the patent implies that such technology already was marketed, and the user need only go look for it. Because Plaintiff's argument is "wholly divorced from the claims or the specification," it cannot defeat a motion to dismiss. *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022) (citation omitted).

Second, the patent does not use technology in an unconventional way. Instead, it asks that the technology be used in a physical space it has not been used in before. "Rather than having created a technological innovation, the patent seeks merely to apply existing technology to the abstract and arguably age-old process" of managing vehicle access. *Becton*, 127 F. Supp. 3d at 694. "Under the principles developed in interpreting [Section] 101, patent law does not protect

---

[9] Defendant contends that "Plaintiff's arguments about 'what was, and what was not, well-understood, routine, and conventional in the art as of August 2005' [are] entirely irrelevant to the eligibility question" because novelty is not relevant in a Section 101 analysis. Reply 2. Defendant is correct that "whether a particular invention is novel is 'wholly apart from whether the invention falls into a category of statutory subject matter.'" *Diamond v. Diehr*, 450 U.S. 175, 190 (1981) (citations omitted). However, the Federal Circuit has held that the conventionality of a patent is relevant to step two of the *Alice* inquiry, and therefore the Court will consider it. *See CareDx*, 40 F.4th at 1379 (citation omitted) (noting that the Federal Circuit analyzes conventionality at both *Alice* steps).

such claims, without more, no matter how groundbreaking the advance." *SAP Am.*, 898 F.3d at 1170.

Third, Plaintiff's allegations that the patent's unconventional application of technology innovates over the prior art are conclusory and thus "insufficient to demonstrate an inventive concept." *Trinity*, 72 F.4th at 1366 (citation omitted). Plaintiff alleges that the "the claims of the ['435 Patent] recite methods resulting in improved functionality of the systems on which they are performed and represent technological improvements to the operation of computers as tools of trade." Compl. ¶ 19. Plaintiff then lists the alleged benefits over the prior art. *See id.* Blanket statements that a patent has advantages over the prior art are conclusory. *See Trinity* 72 F.4th at 1365-66 (holding as conclusory allegations that "the prior art did not include, alone or in any combination" certain features of the new patent, and therefore the new patent "includes an advance over the prior art and an improvement over a general-purpose computer").

The Court concludes that the '435 Patent lacks a sufficiently inventive concept to transform it into patent-eligible subject matter. Because the '435 Patent is also directed at an abstract idea, it is invalid under Section 101.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant NextGen Parking, LLC's Motion to Dismiss [ECF No. 12]. Therefore, Plaintiff PerformancePartners LLC's claims are **DISMISSED WITH PREJUDICE**.

> **SO ORDERED.**

> SIGNED March 26, 2024.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**